UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL MAGANA<br><br>Defendant. | 2:05-cr-00431 RLH-(RJJ)<br><br>REPORT & RECOMMENDATION<br>OF UNITED STATES<br>MAGISTRATE JUDGE<br>(Defendant's Motion to Suppress Firearms<br>& Statements (#24)) |

This matter came before the court for a hearing on Defendant Daniel Magana's Motion to Suppress Firearms & Statements Derived from Unlawful Automobile Inventory Search in Violation of the Fourth Amendment (#24). The Court has considered the Defendant's Motion to Suppress (#24), the Government's Response (#25), and the Reply to the Government's Response (#28), as well as the testimony and evidence presented in court.

## BACKGROUND

On November 16, 2005, Daniel Magana (hereinafter the defendant) was indicted on two counts of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). Indictment (#2).

On June 24, 2005, at approximately 5:26 p.m., Officer Eli Prunchak of the Las Vegas Metropolitan Police Department (LVMPD) initiated a traffic stop of a black Lexus SUV that failed to stop as required at the intersection of Chantilly Avenue and Marion Drive. The driver of the Lexus SUV, subsequently identified as the defendant, Daniel Magana, did not immediately stop, but

1  rather drove about two blocks and stopped at the corner of Wendover Avenue and Teakwood
2  Avenue. Magana then exited his vehicle and ran into Stewart Park Place. Officer Prunchak began
3  a foot pursuit of the defendant, but lost sight of him. Subsequently, a perimeter was established
4  around a house identified as the residence of the vehicle owner, Defendant Magana.

5  Officer Sean Lucero arrived at the defendant's unattended vehicle approximately one to two
6  minutes later. The Government asserts that the Lexus was left in the middle of the road with the
7  driver's door wide open. The defendant claims that the car was parked at the curb with the door
8  shut. The Government insists that the Ruger .357 charged in Count 1 of the indictment was in plain
9  view, and that the AR-15 rifle that bore the engraving "LVMPD" charged in Count 2 of the
10 indictment was also in plain view when Officer Lucero opened the rear hatch in an attempt to
11 determine if there were any other suspects in the vehicle after seeing the Ruger .357. During the
12 hearing, Jose Plasencia testified that two officers approached the vehicle approximately 3-4 minutes
13 after Officer Prunchak ran after the defendant. Jose Plasencia stated that one officer cupped his
14 hands around his eyes and the rear window of the vehicle in an apparent attempt to see into the SUV
15 prior to opening the window. The other officer opened the door on the driver's side and got into the
16 car in order to search it after the other officer opened the rear window.

17 After a police perimeter was established around the house located at 14 Locustwood, a
18 female identified as Senovia Valvar, the defendant's mother, came out of the house. Ms. Valvar
19 went back into the house and approximately five minutes later the defendant emerged from the house
20 with his hands in the air to surrender. The defendant was then handcuffed and given his <u>Miranda</u>
21 warnings. The Government argues that the defendant waived his <u>Miranda</u> rights by stating that he
22 understood and then responding to Officer Prunchak's questions.

23 The Government asserts that after the defendant was in custody, an officer conducted an
24 inventory search of the defendant's vehicle in which both firearms that were seen earlier by the
25 officers were seized. The defendant asserts that the inventory search done on his vehicle was done
26 prior to his arrest.

27 The defendant was then questioned regarding the firearms and made inculpatory statements.
28 The defendant argues that he was placed under arrest only after he made his inculpatory statements.

1   After the evidentiary hearing it became apparent to the Court that there were photographs that had
2   been taken at the scene by a LVMPD I.D. technician. Pursuant to a Court request, the U.S. Attorney
3   obtained three copies of the photographs taken at the scene and delivered one set of photographs to
4   the Court, delivered one set to the defendant, and retained one set for the Government's file. Notice
5   of Filing Photographs (#33). Following the receipt of the photographs, the Court decided that in the
6   interest of justice and in the pursuit of its truth seeking function, it would sua sponte re-open the
7   evidentiary hearing in order to receive testimony from the criminologist who took the photographs
8   and to hear testimony from a dispatcher regarding the contents of the dispatch report (Defendant's
9   Exhibit D) which was introduced and admitted during the previous evidentiary hearing. Minute
10  Order in Chambers (#37). The defendant filed an objection to the re-opening of the hearing, which
11  was denied by this court. Motion (#38) and Minutes of Proceedings (#39).

## DISCUSSION

**SEARCH OF VEHICLE--Standing**

**Reasonable Expectation of Privacy**

The United States argues that the defendant abandoned his vehicle when he fled from the police and that he therefore lacks standing to assert that the search of the vehicle violated the Fourth Amendment. "If a person has voluntarily abandoned property, he has no standing to complain of its search or seizure." U.S. v. Jackson, 544 F.2d 407, 409 (9th cir. 1976) (citing Abel v. U.S., 362 U.S. 217, 240-41 (1960)).

> Abandonment is primarily a question of intent, and intent may be inferred from words, facts, and other objective facts. Abandonment here is not meant in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search.

Id. (citations omitted). "Reasonableness is ascertained by application of objective standards in a determination of whether there was a justified expectation of privacy." U.S. v. Pruitt, 464 F.2d 494, 496 (9th Cir. 1972) (citing Katz. v. U.S., 389 U.S. 347, 353 (1967)).

Several Courts have addressed the issue of an abandoned vehicle and demonstrated the appropriate analysis for determining whether or not the defendant in this case abandoned his vehicle. Review is based on an objective reasonable expectation of privacy standard. In U.S. v. Oswald, 783

1   F.2d 663, 665-67 (6th Cir. 1986), the Sixth Circuit stated that the expectation of privacy "will vary

2   with the location of the property."  The court stated that "depart[ing] the scene very quickly would

3   not of itself indicate abandonment[.]" 783 F.2d at 667.  In U.S. v. Edwards, 441 F.2d 749, 751 (5th

4   Cir. 1979),  the defendant "jumped from the car, leaving the lights burning and the engine running,

5   and fled on foot. . . . The officer testified that . . . [b]ecause [the defendant] abandoned the car and

6   [the officer] wanted to see what [he] had and just take inventory of what [he] had" he searched the

7   car, including the trunk.  The court noted that the "[d]efendant's right to Fourth Amendment

8   protection came to an end when he abandoned his car to the police, on a public highway, with engine

9   running, keys in the ignition, lights on, and fled on foot.  At that point defendant could have no

10  reasonable expectation of privacy with respect to his automobile."  Id.  In Edwards, the court held

11  that the police may enter the vehicle to ascertain the owner.  "The rationale for allowing such

12  warrantless searches is that the automobile owner has no reasonable expectation of privacy.  U.S.

13  v. Barlow, 17 F.3d 85, 88 (citing Kimbrough v. Beto, 412 F.2d 981 (5th Cir. 1969).  In Barlow, the

14  defendant

> left his car parked at night at the end of a public street, away from public parking, behind a shopping center and near its back alley where only deliveries occur, unlocked, and with the key in the ignition. . . . Given these facts, it was reasonable to assume the car had been abandoned, and the officer was justified in searching the car to identify its owner. . . . The fact that the defendant had fled from the vehicle (or abandoned his return to it) is irrelevant, as the police officer could not have known of that fact. . . . *"[T]he motive of the police in obtaining evidence is irrelevant because it is the reasonableness of the defendant's expectation [of privacy] that is to be assessed, not the conduct of the police."*

20  U.S. v. Barlow, 17 F.3d 85, 88 (5th Cir. 1994 ) (quoting David H. Steinberg, Constructing Homes

21  for the Homeless?  Searching for a Fourth Amendment Standard, 41 DUKE L.J. 1508,1544 (1992)

22  (emphasis added)).  The court concluded that "a police officer who discovers an unlocked car left

23  at the end of a public street with the key in the ignition could reasonabl[y] conclude that the car had

24  been abandoned. 17 F.3d at 89 n.1.  In U.S. v. Walton, 538 F.2d 1348, 1354 (8th Cir. 1976), the court

25  held that when the defendant "fled from and abandoned the car when [the officer] appeared on the

26  scene . . . the subsequent warrantless search and examination of the vehicle on the scene by members

27  of the [ ] Police Department [did not] violate[ ] any fourth amendment right[.]" Similarly, in U.S.

28  v. Tate, 821 F.2d 1328, 1330 (8th Cir 1987), the court held that when the defendant "fled the scene

1 . . . leaving the van unoccupied and unlocked, he abandoned his expectation of privacy in the van and its contents." In <u>U.S. v. Anderson</u>, 924 F.Supp. 286, 289-90 (D. Colo. 1996), the court concluded that the defendant abandoned his vehicle because he "did not park the vehicle on the side of the road and lock it, but in fact abruptly stopped his vehicle at an angle to the curb and fled, leaving the vehicle in the street with the motor running." Numerous other cases reflect a similar analysis and conclusion.

In the present case, the defendant asserts that his vehicle was turned off and parked along the curb with all of the doors closed. The government contends that the vehicle was parked in the middle of the street with the engine running, the keys in the ignition, and the driver's side door ajar. These factual distinctions are very significant because if the car was legally parked next to the curb as the defendant argues, the defendant might have a legitimate expectation of privacy in his vehicle and it might not be deemed abandoned. However, if the government's assertion is accurate then an officer could reasonably conclude that the defendant no longer had an expectation of privacy in the vehicle.

Considering the testimony at the hearing, and all other relevant evidence presented to this court, a reasonable officer could conclude that the defendant abandoned his car.

**Location of keys and whether or not the car was running**

Although the dispatch report states that there were no keys in the ignition, it is uncontested that the car was left unlocked. The accuracy of the dispatch report was not proven at the hearing except that the time sequence of the report was consistent with the timing of the events on June 24, 2004. Officer Lucero testified that the keys were in the ignition and that upon approaching the vehicle he could hear the vehicle running. Further, the vehicle impound report states that there was one set of keys with the vehicle. Consistent with the impound report and the testimony of Officer Lucero, there is a picture that was taken by the LVMPD I.D. technician, David Horn, showing the keys in the ignition. The evidence indicates that the keys were in the ignition when the defendant fled the vehicle. Although the defense argued without evidentiary support that the keys could have been taken from the defendant's pocket after his arrest and placed in the ignition of the car prior to the arrival of the I.D. technician, the Court is unpersuaded by this argument.

### Door open v. closed

If the door was in fact ajar it would prove that it was reasonable for the officers to conclude that the defendant abandoned any expectation of privacy. Further, it would support the proposition that the gun found in the defendant's car in the middle console was in fact in plain view. Officer Lucero testified that the door was open when he arrived at the vehicle. However, Jose Plasencia testified that the defendant closed the door upon exiting the vehicle. Therefore, it is important to examine the reliability of the two witnesses testimony. Officer Lucero testified that he found both weapons in the vehicle. To the contrary, Jose Plasencia testified that there were two officers searching the vehicle. However, the dispatch report appears to state that the handgun in the middle console was the second gun to be reported. But upon closer examination it appears that the first gun that was found was labeled 1735 and the second gun, the AR15 was labeled 1736. The labeling appears to be the times that the Officer reported finding the weapons. The first at 5:35 pm and the second at 5:36 pm. This would be consistent with Officer Lucero's testimony of the events. Officer Prunchak also testified that the door to the vehicle was left open. He testified that he ran right passed the open door while in foot pursuit of the defendant. Officer Hubbard also testified that the door to the vehicle was open when he drove by it. The I.D. technician testified that he was uncertain whether or not the door was open or closed when he arrived. However, based on the fact that the defendant was fleeing his vehicle in a hurry in an effort to evade the police, and all of the other consistent evidence presented to this Court; it is the Court's conclusion that the door was in fact left ajar.

### Location of Vehicle

Detective Sean Hubbard stated that when he drove by the vehicle, it was parked in the opposite lane of travel. (Transcript 56: 23). Officer Lucero also testified that the vehicle was in the middle of the street facing west bound with the door open, impeding traffic. (Transcript 67: 24). Although there was contrary testimony given by Jose Plasencia that the car was lawfully parked next to the curb with the doors shut, the overwhelming weight of the evidence proves that the car was not legally parked. Officer Prunchak's arrest report indicates that the vehicle was stopped on the road in a direction going against traffic. The report states that the vehicle went northbound on Wendover

1  to Teakwood, based on the two photographs provided at the initial hearing (Defendant's Exhibits
2  F & G) and the testimony of Officer Lucero, Officer Hubbard, and Jose Plasencia, the car was facing
3  the opposite direction of the flow of traffic. Jose Plasencia's testimony supports this conclusion
4  because if the vehicle was driving on Wendover towards Teakwood, and the defendant suddenly
5  stopped without turning the vehicle around, it would be facing on coming traffic. Jose Plasencia
6  marked the location where the defendant parked on the west side of Wendover Street. Defendant's
7  Exhibit G. This alone would be a traffic impediment. Although the testimony from the initial
8  hearing is sufficient to establish that the vehicle was illegally parked, the subsequently produced
9  photographs clearly establish that the vehicle was in fact in the middle of the road. *See* Govt.
10 Exhibits 1, 2, & 6.

11 The Ninth Circuit has stated that "[a]bandonment is not meant in the strict property-right
12 sense, but rests instead on whether the person so relinquished his interest in the property that he no
13 longer retained a reasonable expectation of privacy in it at the time of the search." Jackson, 544 F.2d
14 at 409. Based on the absence of an objective reasonable expectation of privacy, the police acted
15 reasonably in entering the vehicle under the facts of this case. In light of the fact that the defendant
16 left his car unlocked with two guns inside it nearby a park, in the opposite direction of the flow of
17 traffic, with the door open, in the middle of the street, and then fleeing from the police after being
18 chased in his automobile, the defendant could not have had a reasonable expectation of privacy in
19 his vehicle. If the keys were in the ignition and the car was still running, the defendant would clearly
20 have abandoned his expectation of privacy. However, even without this information, the government
21 has met its burden of proving that the defendant abandoned any expectation of privacy in his vehicle
22 based on an objective standard when he fled from Officer Prunchak. Even if the door was closed,
23 the vehicle was still abandoned.

24 The defendant argues that because the vehicle was in close proximity to his residence he was
25 not abandoning his vehicle. However, at the time of the search of the vehicle it is not clear whether
26 or not the officers were aware of the location of the defendant's residence. The standard is an
27 objective standard and the subjective intent of the defendant is irrelevant. Further, abandonment is
28 not determined in a strict property sense, but rather a reasonable expectation of privacy. As

1  previously noted, the motive of the officers is irrelevant to an abandonment analysis. Under these
2  circumstances, the police were justified in determining that the defendant abandoned his expectation
3  of privacy. The defendant cannot raise a Fourth Amendment violation because when he abandoned
4  his vehicle, he likewise abandoned his expectation of privacy.

5  Since the defendant has no standing to assert a Fourth Amendment violation, his other
6  assertions of error regarding the search do not need to be addressed.

7  **SUBSEQUENT STATEMENTS--Knowing and Intelligent Waiver**

8  Magana challenges the admissibility of statements he made to the officers on the day of his
9  arrest. He asserts that his Fourth Amendment rights were violated

10  "[A] waiver must at a minimum be 'voluntary' to be effective against an accused." Colorado
11  v. Connelly, 479 U.S. 157, 169 (citing Miranda v. Arizona, 384 U.S. 436, 444 & 476 (1966)). The
12  test of voluntariness is whether "the confession [is] the product of an essentially free and
13  unconstrained choice by its maker. If it is . . . it may be used against him. If it is not, if his will has
14  been overborne and his capacity for self-determination critically impaired, the use of his confession
15  offends due process." Culombe v. Connecticut, 367 U.S. 568, 602 (1961). The government "bears
16  the burden of proof in a motion to suppress a statement that the defendant claims was obtained in
17  violation of our Miranda doctrine, [but] need prove waiver only by a preponderance of the evidence."
18  Connelly, 479 U.S. at 168.

19  Therefore, it is important to determine whether the defendant made a knowing and intelligent
20  waiver of his Miranda rights. U.S. v. Rodriquez-Preciado, 399 F.3d 1118, 1127 (9th Cir. 2005). In
21  order to be a knowing and intelligent waiver the defendant must have been aware of his Miranda
22  rights, and subsequently have waived those rights. Since the Government bears the burden of proof,
23  the Government must demonstrate that the defendant was apprised of his rights. Although a mere
24  reference to reading Miranda rights is not sufficient evidence, an arresting officer's testimony that
25  he read the Miranda warnings from a Miranda card has been deemed sufficient evidence. U.S. v.
26  Muniz, 93 Fed. Appx. 208 (10th Cir. 2004). In the present case, Officer Prunchak testified that he
27  read the defendant his Miranda warnings from a card that he carries in his pocket. (Transcript 16:
28  3-4.) Further, Officer Prunchak's arrest report states that he read the Miranda warnings to the

defendant from a preprinted card. Defendant's Ex C at 3. Thus, the Government has established that the defendant was advised, and was therefore aware of his Miranda rights.

The next step is to determine whether the defendant intelligently waived those rights. The Supreme Court has held that although

> [a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, [it] is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived his rights delineated in the Miranda case . . . silence, coupled with an understanding of his rights and a course of conduct indicating waiver may [ ] support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great.

North Carolina v. Butler, 441 U.S. 369, 373 (1979).

In the present case Officer Prunchak testified that after he read the defendant his Miranda warnings, he asked the defendant if he understood. The defendant then stated that he did understand. Officer Prunchak then began questioning the defendant. The defendant was cooperative and at no time did he indicate that he was uncertain of any of his rights or that he did not wish to talk to the officer.

The Ninth Circuit has concluded that this is sufficient evidence to show that "the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." U.S. v. Hilliker, 436 F.2d 101, 102 (9th Cir. ) (quoting Miranda, 384 U.S. at 475). In the present case, there was no evidence of intimidating interrogation or coercion. Every indication points to the defendant's understanding and cooperation in answering the officers questions. Therefore, the court finds that the defendant did voluntarily, knowingly and intelligently waive his Fourth amendment rights, as well as his right to retain counsel or have counsel appointed for him before questioning, when he proceeded to answer questions after being read his Miranda warnings.

**RECOMMENDATION**

Based on the foregoing and good cause appearing therefore,

IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that the Defendant's Motion to Suppress Firearms & Statements Derived from Unlawful Automobile

1  Inventory Search in Violation of the Fourth Amendment (#24) be **DENIED**.

2  **NOTICE**

3  Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must
4  be in writing and filed with the Clerk of the Court on or before January 25, 2007.** The Supreme
5  Court has held that the courts of appeal may determine that an appeal has been waived due to the
6  failure to file objections within the specified time. Thomas v. Arn, 474 U.S. 140, 142 (1985). This
7  circuit has also held that (1) failure to file objections within the specified time and (2) failure to
8  properly address and brief the objectionable issues waives the right to appeal the District Court's
9  order and/or appeal factual issues from the order of the District Court. Martinez v. Ylst, 951 F.2d
10 1153, 1157 (9th Cir. 1991); Britt v. Simi Valley United Sch. Dist., 708 F.2d 452, 454 (9th Cir. 1983).

11 DATED this 18th day of January, 2007.

_____
ROBERT J. JOHNSTON
United States Magistrate Judge